**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| RITA COTTON, Individually and For Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>PTAG, INC.,<br><br>    Defendant. | **Case No.** _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Rita Cotton (Cotton) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant PTAG, Inc. (PTAG) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Pennsylvania Minimum Wage Act (PMWA), *see* 43 P.S. § 33.104 *et seq.*

2.      Cotton worked for PTAG as a Document Control Lead.

3.      Cotton and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4.      But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5.      Instead of receiving overtime as required by the FLSA and PMWA, PTAG paid Cotton and the Putative Class Members the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek ("straight time for overtime").

6.      Further, PTAG pays Cotton and the other hourly workers like her a daily per diem. The per diem represents compensation that is primarily for the benefit and convenience of PTAG's hourly workers. As a result, the FLSA requires this type of compensation be included in the calculation of these

workers' regular rate of pay for overtime purposes. Because the per diem was not used in calculating these workers' regular rate of pay, PTAG's hourly workers were not properly compensated at a rate of one-and-one-half times their regular rate of pay—as defined by the FLSA—for all hours worked in excess of 40 hours in a single workweek.

7.        This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8.        This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.        The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10.        Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District and Division.

11.        Specifically, Cotton worked in and around Pittsburgh, Pennsylvania.

12.        Cotton worked overtime in and around Pittsburgh, Pennsylvania.

13.        PTAG failed to pay her overtime in and around Pittsburgh, Pennsylvania.

14.        PTAG conducts substantial business operations in and around Pittsburgh, Pennsylvania.

## PARTIES

15.        Cotton worked for PTAG as a Document Control Lead from approximately April 2017 until May 2019.

16.        Cotton worked for PTAG in and around Pittsburgh, Pennsylvania.

17.        From April 2017 until April 2018, PTAG paid Cotton straight time for overtime plus a per diem.

18.        In fact, Cotton's relationship with PTAG was an employer/employee relationship.

19.     Indeed, in approximately September 2018, PTAG reclassified Cotton as a W2 employee.

20.     Cotton's written consent to be a party is attached as Exhibit A.

21.     Cotton brings this action on behalf of herself and all other similarly situated workers who were paid by PTAG's straight time for overtime scheme.

22.     Each of these workers received the same hourly rate for all hours worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

23.     One collective of similarly situated workers or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of PTAG, who were paid the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek ("straight time for overtime"), at any time during the past 3 years** (Straight Time Class Members).

24.     Cotton also seeks certification of an additional FLSA class defined as follows:

> **All workers employed by, or working on behalf of PTAG, who were paid on an hourly basis and who received a per diem at any time during the past 3 years** (Per Diem Class Members).

25.     Cotton also seeks class certification of a class under Fed. R. Civ. P. 23 under the PMWA, as follows:

> **All workers employed by, or working on behalf of PTAG in Pennsylvania, who were paid the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek ("straight time for overtime"), at any time during the past 3 years** (Pennsylvania Straight Time Class Members).

26.     Further, Cotton also seeks class certification of an additional class under Fed. R. Civ. P. 23 under the PMWA, as follows:

> **All workers employed by, or working on behalf of PTAG in Pennsylvania, who were paid on an hourly basis and who received a per diem at any time during the past 3 years** (Pennsylvania Per Diem Class Members).

27.     The Straight Time Class Members, Per Diem Class Members, Pennsylvania Straight Time Class Members, and Pennsylvania Per Diem Class Members are referred to collectively as the Putative Class Members.

28.     The Putative Class Members are easily ascertainable from PTAG's business and personnel records.

29.     Defendant PTAG can be served with process by serving its registered agent: **National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.**

## COVERAGE UNDER THE FLSA

30.     At all relevant times, PTAG has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

31.     At all relevant times, PTAG has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

32.     At all relevant times, PTAG has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). PTAG has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

33.     In each of the last 3 years, PTAG has had annual gross volume of sales made or business done of at least $1,000,000.

34.     At all relevant times, Cotton and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

35.     PTAG treated Cotton and the Putative Class Members as employees and uniformly dictated the pay practices applied to Cotton and the Putative Class Members.

36.     PTAG's classification of Cotton and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA or PMWA.

37.     PTAG's uniform straight time for overtime scheme, depriving its workers of overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA and PMWA. 29 U.S.C. § 207(a) & (e).

38.     Likewise, PTAG uniformly applied its policy of paying its workers, including Cotton, an excessive per diem reimbursement for expenses normally incurred by an employee for his or her own benefit, which was not considered by PTAG as part of the regular rate for purposes of calculating overtime.

39.     The per diem reimbursement does not fall within the few and narrow exclusions of the FLSA.

40.     By paying its workers a per diem that is not included in PTAG's regular rate calculations for overtime purposes, PTAG violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

41.     As a result of this uniform policy, Cotton and other workers like her do not receive overtime as required by the FLSA.

42.     PTAG's uniform compensation scheme of paying its workers a per diem that is not included in PTAG's regular rate calculations for overtime purposes is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

43.     PTAG bills itself as "[a]n [i]ntegrated [p]roject [d]elivery partner assisting clients in the global Oil & Gas, Mining, Power, and Heavy Infrastructure Industries."[1]

44.     To complete its business objectives, PTAG hires personnel, such as Cotton, to assist its clients with their various projects.

45.     PTAG considers Cotton and the Putative Class Members to be contractors.

46.     But PTAG does not hire these workers on a project-by-project basis.

47.     Rather, PTAG hires and treats these workers just like regular, even if sometimes short term, employees.

48.     Many of these individuals worked for PTAG on an hourly basis, and PTAG paid them straight time for overtime with a per diem.

49.     These workers make up the proposed Putative Class.

50.     For example, Cotton worked for PTAG as a Document Control Lead from approximately April 2017 through May 2019 in and around Pittsburgh, PA.

51.     From approximately April 2017 through April 2018, PTAG paid her the same hourly rate ($60) for all hours worked plus a $150 per diem.

| Customer: | Project Talent Acquisition Group Inc. 2500 Wilcrest Drive  Unit 300 Houston, Texas  77042 Attention: Accounts Payable | | Invoice Number: 00022 | |
|---|---|---|---|---|
| | | | Invoice Date: February 11, 2018 | |
| Item | Quantity | Description | Price | Amount US$ |
| 1.0 | 12.0 | Field Days worked for Period Jan 29th - Feb 11th, 2018 | $   600.00 | $   7,200.00 |
| 2.0 | 14.0 | Per Diem | $   150.00 | $   2,100.00 |

---

[1] https://ptaginc.com/who-we-are/ (last visited February 2, 2020).

52.     As a Document Control Lead, Cotton's primary job duties included assisting with file migration and audits, assisting with preparation of project reports, ensuring all projects are complete documented, and generating reports.

53.     Cotton did not have any supervisory duties.

54.     Cotton did not hire or fire employees.

55.     Cotton did not exercise discretion and judgment as to matters of significant.

56.     From approximately April 2017 through April 2018, PTAG paid her under its straight time for overtime scheme, and paid her a per diem.

57.     Cotton and the Putative Class Members work for PTAG under its straight time for overtime pay scheme.

58.     Cotton and the Putative Class Members do not receive a salary.

59.     If Cotton and the Putative Class Members did not work, they did not get paid.

60.     Cotton and the Putative Class Members receive the same hourly rate for all hours worked.

61.     Cotton and the Putative Class Members do not receive overtime pay.

62.     This is despite the fact that Cotton and the Putative Class Members often work 10 hours a day, for 6 days a week, for weeks at a time.

63.     In addition to her hourly rate, Cotton received approximately $150.00 each day she worked that was intended to reimburse her for things like meals, rent, and other normal everyday expenses.

64.     The per diem was intended to reimburse Cotton and the Putative Class Members for expenses normally incurred by an employee for his or her own benefit and convenience.

65.     But PTAG did not and does not consider the per diem when calculating Cotton and the Putative Class Members' regular rates of pay for overtime purposes.

66.     Because the per diem is not used to reimburse Cotton or the Putative Class Members for expenses incurred by an employee in the furtherance of the PTAG's interest or benefit, those payments are actually disguised wages.

67.     The per diem should be included in the regular rate calculations for overtime purposes.

68.     As such, Cotton and the Putative Class Members were not properly compensated as one-and-one-half times their regular rate – as defined by the FLSA – for all overtime worked in excess of 40 hours in a single workweek.

69.     Without the job performed by Cotton and the Putative Class Members, PTAG would not be able to complete its business objectives.

70.     Cotton and the Putative Class Members relied on PTAG for work and compensation.

71.     Cotton and the Putative Class Members worked in accordance with the schedule set by PTAG and/or its clients.

72.     Cotton and the Putative Class Members cannot subcontract out the work they are assigned by PTAG.

73.     Cotton and the Putative Class Members must follow PTAG and/or its clients' policies and procedures.

74.     Cotton and the Putative Class Members' work must adhere to the quality standards put in place by PTAG and/or its clients.

75.     Cotton and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

76.     Cotton and the Putative Class Members did not market their services while employed by PTAG.

77.     Cotton and the Putative Class Members worked exclusively for PTAG and its clients during the relevant period.

78.     Cotton and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

79.     PTAG and/or its clients set Cotton and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working on jobs for PTAG.

80.     At all relevant times, PTAG and/or its clients maintained control, oversight, and direction of Cotton and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

81.     Cotton's work schedule is typical of the Putative Class Members.

82.     PTAG controls Cotton and the Putative Class Members' pay.

83.     Likewise, PTAG and/or its clients control Cotton and the Putative Class Members' work.

84.     Cotton and the Putative Class Members' work must adhere to the quality standards put in place by PTAG and/or its clients.

85.     Cotton and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

86.     PTAG knows Cotton and the Putative Class Members typically work for 10 hours a day, for 6 days a week.

87.     PTAG's records reflect the fact that Cotton and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

88.     Cotton and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

89.     Instead, Cotton and the Putative Class Members are paid straight time for overtime plus a per diem.

90.     PTAG and/or its clients set these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directive, and its (or its clients') policies and procedures.

91.     PTAG controls Cotton and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they work and the rates they are paid.

92.     While working for PTAG, PTAG controlled all the significant or meaningful aspects of the job duties Cotton and the Putative Class Members perform.

93.     Even though Cotton and the Putative Class Members work away from PTAG's offices without the constant presence of PTAG supervisors, PTAG still controls significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

94.     Cotton and the Putative Class Members do not provide the significant equipment they work with on a daily basis, such as office space, computers, and communication devices.

95.     PTAG (and/or its clients) make these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Cotton and the Putative Class Members work.

96.     Cotton and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

97.     The daily and weekly activities of Cotton and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by PTAG.

98.     PTAG prohibits Cotton and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Cotton and the Putative Class Members to follow PTAG's (or its clients') policies, procedures, and directives.

99.     All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

100.    All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

101.    All of the Putative Class Members work in excess of 40 hours each week.

102.    PTAG uniformly denies Cotton and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

103.    Cotton and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

104.    PTAG's straight time for overtime plus per diem policy violates the FLSA and PMWA because it deprives Cotton and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

105.    PTAG knew Cotton and the Putative Class Members worked more than 40 hours in a week.

106.    PTAG knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA and PMWA's overtime provisions.

107.    Nonetheless, Cotton and the Putative Class Members were not paid overtime.

108.    PTAG knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA and PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

109.    Cotton brings this claim as a class and collective action under the FLSA and PMWA.

110.    The Putative Class Members were victimized by PTAG's pattern, practice, and/or policy which is in willful violation of the FLSA.

111.    Other Putative Class Members worked with Cotton and indicated they were paid in the same manner (straight time for overtime with a per diem) and performed similar work.

112.    Based on her experiences with PTAG, Cotton is aware that PTAG's illegal practices were imposed on the Putative Class Members.

113.    The Putative Class Members are similarly situated in all relevant respects.

114.    Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

115.    The illegal straight time for overtime plus per diem policy that PTAG imposes on Cotton is likewise imposed on all Putative Class Members.

116.    Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

117.    The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

118.    The overtime owed to Cotton and the Putative Class Members will be calculated using the same records and using the same formula.

119.    Cotton's experiences are therefore typical of the experiences of the Putative Class Members.

120.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

121.    Cotton has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

122.    Like each Putative Class Member, Cotton has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

123.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

124.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and PTAG will reap the unjust benefits of violating the FLSA.

125.    Further, even if some of the Putative Class Members could afford individual litigation against PTAG, it would be unduly burdensome to the judicial system.

126.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

127.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

128.    Among the common questions of law and fact are:

   a.    Whether PTAG employed the Putative Class Members within the meaning of the FLSA and PMWA;

   b.    Whether the per diem PTAG paid to these workers was excessive;

   c.    Whether PTAG's decision to pay straight time for overtime these workers was made in good faith;

   d.    Whether PTAG's violation of the FLSA was willful; and

   e.    Whether PTAG's illegal pay practice applied to the Putative Class Members.

129.    Cotton and the Putative Class Members sustained damages arising out of PTAG's illegal and uniform employment policy.

130.    PTAG is liable under the FLSA for failing to pay overtime to Cotton and the Putative Class Members.

131.    Consistent with PTAG's illegal straight time for overtime plus per diem policy, Cotton and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

132.    As part of their regular business practices, PTAG intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Cotton and the Putative Class Members.

133.    PTAG's illegal straight time for overtime plus per diem policy deprived Cotton and the Putative Class Members of the premium overtime wages they are owed under federal and state law.

134.    PTAG is aware, or should have been aware, that the FLSA required it to pay Cotton and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

135.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

136.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

137.    Those similarly situated workers are known to PTAG, are readily identifiable, and can be located through PTAG's records.

## CAUSE OF ACTION
## VIOLATIONS OF THE FLSA

138.    Cotton realleges and incorporates by reference all allegations in preceding paragraphs.

139.    Cotton brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

140.    PTAG violated, and is violating, the FLSA by failing to pay Cotton and the Putative Class Members overtime.

141.    PTAG failed to guarantee Cotton and Putative Class Members a salary.

142.    PTAG failed to pay Cotton and Putative Class Members overtime.

143.    PTAG paid Cotton and Putative Class Members straight time for overtime.

144.    PTAG also paid Cotton and Putative Class Members a per diem that it did not include in its calculation of these workers regular rate of pay for overtime purposes.

145.    PTAG violated, and is violating, Section 7 of the FLSA by failing to include the per diem in the calculation of the regular rate of pay to determine the overtime rate. 29 U.S.C. § 207(e)(2) (As used in this section "regular rate" at which an employee is employed shall be deemed to include all renumeration for employment paid to, or on behalf of, the employee…); *see also* 29 C.F.R. § 778.217(d) ("If the employer

reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate there. An employee normally incurs expenses in traveling to and from work, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the regular rate as "reimbursement for expenses.") As such, PTAG has failed to properly pay Cotton and the Putative Class Members overtime wages at one-and-one-half their regular rates for all hours worked in excess of 40 hours per workweek.

146.     PTAG's failure to pay Cotton and the Putative Class Members overtime at rates not less than one and one-half times their proper regular rate violates 29 U.S.C. § 207.

147.     PTAG knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

148.     PTAG's failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

149.     Accordingly, Cotton and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

### CAUSE OF ACTION
### PMWA VIOLATIONS

150.     Cotton brings his claim under the PMWA as a Rule 23 class action.

151.     The conduct alleged violates the PMWA.

152.     At all relevant times, PTAG was subject to the requirements of the PMWA.

153.     At all relevant times, PTAG employed Cotton and the Pennsylvania Class Members as "employees" within the meaning of the PMWA.

154.     The PMWA requires employers like Defendants to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

155.    Cotton and the Pennsylvania Class Members are entitled to overtime under the PMWA.

156.    PTAG has and has had a policy and practice of failing to pay Cotton and the Pennsylvania Class Members overtime for hours worked in excess of 40 in a workweek.

157.    Cotton and the Pennsylvania Class Members seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

158.    Cotton and the Pennsylvania Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by PTAG, as provided by the PMWA.

## JURY DEMAND

159.    Cotton demands a trial by jury.

## PRAYER

WHEREFORE, Cotton, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

   a.    An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

   b.    A judgment against PTAG awarding Cotton and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

   c.    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

   d.    An order awarding attorneys' fees, costs, and expenses;

   e.    Pre- and post-judgment interest at the highest applicable rates; and

   f.    Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    **Michael A. Josephson**
    PA ID No. 308410
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Taylor A. Jones**
    Texas Bar No. 24107823
    (*pro hac vice application forthcoming*)
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **AND**

    **Joshua P. Geist**
    PA ID No. 85745
    Goodrich & Geist, PC
    3634 California Ave.
    Pittsburgh, PA 15212
    412-766-1455 – Telephone
    412-766-0300 – Facsimile
    josh@goodrichandgeist.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**